ORTON P. WARD *vs.* J. A. ANDERBERG.

December 11, 1883.

**Usury—Chattel Mortgage.**—The chattel mortgage which the statute (Laws· 1879, *c.* 66, § 3) avoids for usury is one which, *in fact*, reserves or secures a rate of interest greater than 10 per cent., and not one which merely *appears upon its face* to do so.

**Same—Misdescription of Note in Mortgage.**—Application of this rule to a case in which a chattel mortgage was conditioned for the payment of a named sum "according to a certain note of even date, with interest at twelve per cent.," when, in fact, the note drew but 10 per cent.

Replevin.   Plaintiff brought this action in a justice's court, to recover the possession of a horse, and, judgment having been rendered in favor of defendant, appealed to the district court for Goodhue· county upon questions of law and fact.

Plaintiff's claim to the right of possession of the horse was made as mortgagee under a chattel mortgage given by one Peterson, by whom the horse was delivered to the defendant subsequent to the giving and filing of plaintiff's mortgage.   On the trial in the district court, before *McCluer, J.,* and a jury, the plaintiff's mortgage was· offered in evidence, and was excluded on defendant's objection that it was void upon its face, having been given to secure a note drawing interest at twelve per cent. per annum.   The note received in evi-· dence and identified by plaintiff as the one secured by the mortgage·

drew ten per cent. When the plaintiff rested, a verdict for defendant was directed by the court, judgment was entered, and the plaintiff appealed.

*J. C. McClure*, for appellant.

*W. Colvill*, for respondent.

BERRY, J. The plaintiff claims the horse in controversy as a mortgagee. Upon the trial, having introduced the note which, as he testified, was secured by the mortgage, and which drew interest at 10 per cent., and having proved filing and indexing, he offered the mortgage itself in evidence. It is conditioned for the payment of a named sum, "according to a certain note of even date, with interest at twelve per cent." Save as respects this rate of interest, the condition conforms accurately to the terms of the note. Defendant objected to the introduction of the mortgage, on the ground that it was usurious, (in calling for a rate of interest in excess of 10 per cent.,) and therefore void under Laws 1879, *c.* 66, § 3. The trial court excluded the mortgage, and, in our opinion, this was wrong. Upon the evidence, the mortgage is not, in fact, usurious, the note showing that, as respects the rate of interest, there is a scrivener's mistake in the mortgage, the rate of interest in fact secured being 10 per cent. only. The statute (Laws 1879, *c.* 66, § 3) is that all notes, chattel mortgages, and other contracts, "whereupon or whereby there shall be reserved, secured, or taken any greater sum or value for the loan or forbearance of any money" than at the rate of ten per cent. per annum, "shall be void," with exceptions not here important. Shall be *reserved* or *secured,*—that is to say, *reserved* or *secured in fact*, for a sum or value merely *appearing* to be reserved or secured, when not reserved or secured *in fact*, is not *reserved* or *secured* at all. The mortgage, then, which the statute avoids, is one which, *in fact*, reserves or secures a rate of interest greater than 10 per cent. The plaintiff's mortgage did not, *in fact*, secure a rate of interest greater than 10 per cent., and hence it was not void, but valid. Upon its face, however, it appeared to be usurious.

Admitting that the defendant was in a proper position to take advantage of usury, if any, in the mortgage, had he the right to insist that it was usurious because it appeared to be so, although in fact

not usurious? No; and for the reason that the statute avoids a contract for actual usury, not for a false appearance of usury. A transaction *appearing* to be usurious is not necessarily usurious *in fact.* This case is an instance in point, and so would be a case in which a lender should lend $110 for a year, taking the borrower's note for that time for $100, at 12 per cent. interest; and as the one voice of the authorities (see Tyler, Usury, *c.* 9, *passim*) is that there can be no usury without a corrupt intent,—that is to say, an intent to take interest greater than the law allows,—it follows that in all cases where this intent is wanting, the transaction is not usurious whatever its appearance. Under this rule many instances (like the present) are found in the books in which, by a scrivener's mistake, a transaction has been made to appear usurious, though not so in fact or in law. Many of these instances are collected in Tyler on Usury, *c.* 17. The result of all this is that when a person relies on the appearance, he does so knowing (in law) that the appearance is not conclusive, but that it is the *fact* alone which constitutes usury.

Upon the facts before us it follows, in our opinion, that the mortgage involved in this case was, so far as any question of usury is concerned, valid, not only as between the parties to it, but as to all other persons. Hence its exclusion was error, and the judgment is accordingly reversed and a new trial awarded.

GILFILLAN, C. J., *dissenting.* I concur in the result, but on the ground that when the chattel mortgage was offered and excluded the defendant did not appear to be a creditor of the mortgagor, nor a purchaser, nor mortgagee in good faith, so as to be entitled to the protection of Gen. St. 1878, *c.* 39, § 1. It did not appear but that as to him the mortgage was valid, if valid between the mortgagor and mortgagee, and consequently, as the case stood, the inquiry was as to the validity of the mortgage in fact, though it appeared to be void. I dissent, however, from the proposition in the opinion that the mortgage, if as between the parties to it valid in fact though void on its face, is, being filed, valid as to the parties intended to be protected by the statute referred to. That can be sound only on the proposition that the presence in the files of the mortgage, void on its face

for usury, made it the duty of creditors, purchasers, or mortgagees to go further and ascertain, if they could, that the appearance of usury was a mistake, and that in fact there was no usury. It seems to me that the filing of an instrument which on its face is, for any reason, a nullity, can have no effect whatever either to create the obligation to make further inquiry or any other.