MARTIN SWANSON v. REALIZATION & DEBENTURE CORPORATION
OF SCOTLAND and Another.[1]

December 8, 1897.

Nos. 10,829—(122).

**Usury—Payment of Interest in Advance—Findings of Court.**

The mere fact that interest payments upon a loan maturing five years from date have been advanced so that a slightly greater rate of interest than that allowed by law is reserved or secured to the lender will not, of itself, support a finding that the loan was usurious, and that the contract was made with a corrupt intent to evade the law.

**Foreclosure of Mortgage—Redemption by Creditor—Assignment of Judgment against Mortgagor—Failure to File under G. S. 1894, § 5431.**

A mortgage upon real estate having been foreclosed under the power, W., claiming to be a judgment creditor of the mortgagors, redeemed, in strict accordance with the provisions of G. S. 1894, § 6044. The judgment under which he made the redemption had been obtained by another party, and had been assigned twice before it became the property of W. through a third assignment in writing. None of these assignments had ever been

[1] Reported in 73 N. W. 165.

filed or entered in the manner pointed out by G. S. 1894, § 5431. *Held*, that the redemption was valid when made.

**Same—Levy on Judgment by Creditor of Original Holder—Payment of Judgment—Effect on Redemption.**

Some weeks subsequent to the redemption, the assignments remaining unfiled, a judgment creditor of the party originally obtaining the judgment upon which the redemption was made caused a writ of execution to be issued upon his judgment, and a levy to be made upon the other judgment; claiming a right so to do by virtue of the provisions of section 5431, supra. A sale upon this writ and levy was made. The mortgagees (judgment debtors) paid the amount due upon the judgment to the purchaser at the sale, and thereupon he satisfied and discharged the same. *Held*, that this did not invalidate or affect the redemption previously made by W.

**Same—Modification of Right of Creditor to Redeem under G. S. 1894, § 6044.**

There can be no modification of a creditor's right to redeem under section 6044, supra; nor can he be deprived of his rights, when he has redeemed, by any agreement made between a mortgagor and a purchaser at the foreclosure sale to extend the statutory period of redemption.

**Same—Action to Cancel Usurious Note by Mortgagor—Conveyance of Mortgaged Premises.**

Although a mortgagor may have parted with his interest in real property mortgaged to secure the payment of a note tainted with usury, he may maintain an action to cancel his note upon the ground of usury when a foreclosure of the mortgage, under a power therein contained, is attempted.

Action in the district court for Polk county to enjoin the sale of certain real estate upon foreclosure of a mortgage claimed to be usurious. The facts are stated in the first opinion. After a trial without a jury judgment was entered pursuant to the findings and order of Ives, J., setting aside the mortgage and note as usurious and enjoining the defendants from foreclosing it. From this judgment the defendant corporation appealed. Reversed.

*A. A. Miller* and *Wilson & Van Derlip*, for appellant.

Inter partes, the assignments were valid and effectual without filing. The statute, G. S. 1894, § 5431, is for the benefit only of subsequent attaching creditors and purchasers in good faith. Coy-

kendall v. Ladd, 32 Minn. 529; Bank v. Ellis, 30 Minn. 270; Tolbert v. Horton, 31 Minn. 518; Howe v. Cochran, 47 Minn. 403; Clark v. B. B. Richards, 68 Minn. 282. Judgment is paid by operation of law the moment redemption is effected, by reason of the lesser title (the lien) becoming ipso facto merged in the greater. Sprague v. Martin, 29 Minn. 226, 231. The judgment of the municipal court of Duluth was for $9.08 damages and costs. Only judgments exceeding ten dollars exclusive of costs can be transcripted to the district court. Sp. Laws 1887, c. 320, § 14. The district court never acquired jurisdiction to issue execution. But no one is in position to contest the sufficiency of the lien under which a creditor seeks to redeem except a subsequent lienor. Bovey v. Tucker, 48 Minn. 223, 229.

The right of redemption is purely statutory. Atwater v. Manchester, 45 Minn. 341. After a valid foreclosure sale the interested parties have their several absolute rights connected with the property. (1) The mortgagor has the right to pay the amount for which the property was sold, with interest and costs, at any time within a year after the sale, and so annul the sale. (2) The purchaser has the right to maintain his absolute ownership of the property sold, as against the mortgagor, provided no redemption is made within a year after the sale; and as against subsequent lien creditors the right to receive his mortgage debt with interest and costs in case of their redemption, and if none of them redeem within the statutory time the ownership of the property freed from the liens. (3) A lien creditor has the right to redeem from the purchaser and all prior redeeming creditors, if any, by paying the proper amount and thereafter own the property if no older creditor redeems and pays his debt. Abraham v. Holloway, 41 Minn. 156, 161; Pamperin v. Scanlan, 28 Minn. 345; Tice v. Russell, 43 Minn. 66; Todd v. Johnson, 50 Minn. 310; Sprague v. Martin, supra; Smith v. Buse, 35 Minn. 234. To redeem creditors having a lien must file notice of intention to redeem within the twelve months allowed for redemption, and must redeem "within five days after the expiration of the said twelve months." G. S. 1894, § 6044. As respects all other parties interested in the property, the only absolute right of the mortgagee, or the purchaser who succeeds to his contingent inter-

est, is to receive the principal and interest of his mortgage debt. Atwater v. Manchester, supra; Bovey v. Tucker, supra. It follows that the pretended extension of time of redemption was nugatory as respects any subsequent creditor.

The sale was not only regular, but was valid. Johnson v. Williams, 4 Minn. 183 (260); Merrill v. Nelson, 18 Minn. 335 (366); Abbott v. Peck, 35 Minn. 499; G. S. 1894, § 6036. The sale is regular if no request be made by one interested in the title that the separate tracts shall be sold. Willard v. Finnegan, 42 Minn. 476; Ryder v. Hulett, 44 Minn. 353; Clark v. Kraker, 51 Minn. 444; Abbott v. Peck, supra. If the sale was valid it cannot be attacked with success either collaterally or in a direct proceeding. But see 2 Jones, Mort. § 1921, and cases cited.

Every suit must be prosecuted by the real party in interest. If a plea sets up a lack of interest in the plaintiff, and is admitted, it will be a bar to the suit. But when the necessary interest has been transferred by the original plaintiff or devested by operation of law, the present owner of the interest for his own protection may prosecute the suit to a close in the name of either the original plaintiff or himself after substitution. Mills v. Hoag, 7 Paige, 18; Ingersoll v. Sawyer, 2 Pick. 276; Cresap v. Hutson, 9 Gill, 269; Kidd v. Morrison, Phil. Eq. (N. C.) 31; True v. Haley, 24 Me. 297; Rowell v. Hayden, 40 Me. 582; Phillips v. Leavitt, 54 Me. 405; Mason v. York, 52 Me. 82; Colwell v. Warner, 36 Conn. 224; Brewer v. Dodge, 28 Mich. 359; Smith v. Price (Ky.) 7 S. W. 918; Leavitt v. Inhabitants, 78 Me. 574; Fulton v. Greacen, 44 N. J. Eq. 443; Faucher v. Grass, 60 Iowa, 505; Bailey v. March, 2 N. H. 522; Story, Eq. Pl. § 348; State v. Kansas, 97 Mo. 331; Dunning v. McDonald, 54 Minn. 1; St. Anthony v. Vandall, 1 Minn. 195 (246).

Defendant corporation is a bona fide holder of the notes. Peters v. Gray, 9 Wash. 383. The contract to pay interest semiannually, even at the highest rate permitted by law, does not constitute usury. Myer v. City, 1 Wall. 384. Neither does the fact that the interest coupons bore interest after maturity constitute usury. Rose v. Munford, 36 Neb. 148; Hawley v. Howell, 60 Iowa, 79; Hager v. Blake, 16 Neb. 12. Nor does the fact that a few days intervened between the date of the securities and the time when the money

was paid over to the borrower constitute usury. Daley v. Minnesota, 43 Minn. 517. An intention on the part of the lender to obtain more than the legal rate of interest is necessary to constitute usury. Jackson v. Travis, 42 Minn. 438; Ward v. Anderberg, 31 Minn. 304; Condit v. Baldwin, 21 N. Y. 219; Lloyd v. Scott, 4 Pet. 205; Bank v. Waggener, 9 Pet. 378.

*H. Steenerson,* for respondent.

White did not have the status of a bona fide purchaser at a judicial sale, and should therefore be compelled to make restitution. Branley v. Dambly, 69 Minn. 282; 2 Black, Judg. § 955. If the judgment was permitted to live through White's neglect, it was extinguished by being levied upon and sold under the execution in favor of Maghan, as fully as if it had been vacated, reversed, set aside or otherwise satisfied. Reynolds v. Harris, 14 Cal. 667; Marks v. Cowles, 61 Ala. 299; Twogood v. Franklin, 27 Iowa, 239; Major v. Collins, 17 Ill. App. 239; Smith v. Bohon, 12 Bush, 448; Gott v. Powell, 41 Mo. 416.

When the Maghan judgment was rendered the law relative to the transcripting of judgments from the municipal court of Duluth to the district court was regulated by Sp. Laws 1891, c. 53, § 47, under which any judgment, regardless of the amount, could be transcripted.

The time for redemption may be extended by the agreement of the parties. Steele v. Bond, 28 Minn. 267. An extension of the redemption period may also arise by estoppel. Tice v. Russell, 43 Minn. 66; 2 Jones, Mort. § 1053; 20 Am. & Eng. Enc. 620, and cases cited; Brown v. Lawton, 87 Me. 83. Since it is lawful for the parties to extend the period of redemption, it is clear that a subsequent lienor can acquire no interests in the premises by attempting to redeem before the extended redemption period expires. G. S. 1894, § 6039. The agreement extending the period of redemption needs not to be in writing, under the statute of frauds. The statute provides that "No action shall be maintained" upon an agreement of this kind. Bishop, Cont. §§ 1235, 1273.

The appellant did not get the note until after maturity, hence he is not a bona fide holder. First Nat. v. County, 14 Minn. 59 (77);

First Nat. v. Forsyth, 67 Minn. 257. The test of whether a contract is usurious is will it, if performed, result in securing to the lender a greater rate of interest than is permitted by law. Smith v. Parsons, 55 Minn. 520.

COLLINS, J.

Appeal from a judgment entered on findings of fact and conclusions of law filed upon the trial of an action brought by a mortgagor of real property to enjoin and restrain permanently the defendant sheriff from selling at a foreclosure of the mortgage under the power, and also to have the mortgage and the notes thereby secured adjudged void and canceled upon the ground of usury.

There was little or no dispute over the facts, but they are quite complicated, and had best be fully stated: Swanson, the plaintiff, was the owner of the mortgaged land, April 17, 1891, at which time he and his wife executed and delivered the mortgage in controversy. The Security Investment Company, a corporation, was the mortgagee; and the entire transaction was conducted and concluded by its president and general manager, Willis A. White. The mortgage was given to secure plaintiff's note for $1,500, payable to the corporation in five years, with six per cent. interest coupons attached, payable semiannually. At the same time this plaintiff and his wife executed and delivered another mortgage upon the land, in which White was named as mortgagee, and also a mortgage upon certain personal property with White as mortgagee. These last-named mortgages were given to secure three notes payable to White,—one for $300, bearing ten per cent. interest, and payable November 1, 1891; one for $150 with ten per cent. interest after maturity, payable January 1, 1892; and the third for the same amount with the same rate of interest after maturity, payable November 1, 1892. This was all one transaction. Swanson actually received $1,800 in cash, and the three notes last mentioned, as well as the mortgages securing them, were really the property of the corporation.

It was agreed that the loan was to bear ten per cent. interest, and it is claimed that the two notes, each for $150, represented, in

fact, nothing but the difference between the six per cent. annual interest on $1,500, evidenced by the coupons, and the ten per cent. agreed upon as the annual rate of interest. No bonus was charged, or agent's fees deducted from the $1,800, and it was shown upon the trial that the fees or commissions of the local agent through whom the application for loan was made, $45, were paid by the mortgagee corporation.

November 5, 1894, the $1,500 note and the mortgage securing the same were duly assigned by the mortgagee to this defendant, a foreign corporation, to enable the latter to act as trustee for the original mortgagee. The court did not find what coupons had then been paid, but from the evidence it seems that default in the payment of interest was not made until the November 1, 1894, coupon matured. Foreclosure proceedings under the power were instituted May 4, 1895, default having been made in the payment of at least one interest coupon; and, as authorized in the mortgage, the defendant assignee elected to declare, and did declare, the whole debt due. This action was soon afterwards commenced.

June 14, 1892, Swanson and his wife executed and delivered a third mortgage upon this land to one Tronnes. This was given to secure the payment of a note for $800, and, default having been made in payment, a foreclosure under the power was had; sale of the premises being duly made December 9, 1895, to the mortgagee, Tronnes.

October 29, 1892, one Mary Dowling duly obtained a judgment for the sum of $104.55 against said mortgagors, Swanson and his wife, in justice's court, in the county in which the land was situated. A transcript of this judgment was duly docketed in the office of the clerk of the district court for Polk county May 31, 1893. The judgment was then sold and in writing assigned by said creditor, Dowling, to one Montague, and by Montague to one Meagley, and by the latter to Willis A. White, before mentioned. He was the owner of this judgment December 9, 1896, and no part of it had been paid. None of these written assignments had then been, or were thereafter, filed in the office of the clerk of said district court; and, of record, Dowling still appeared to be the judgment creditor.

December 9, 1896, White filed due notice of his intention to re-

deem as a judgment creditor from the foreclosure sale under the third, or Tronnes, mortgage. No redemption was made by the mortgagors, and, in due form, White, as creditor, made the redemption by paying to the sheriff of the proper county the full sum necessary for the purpose; receiving from such sheriff a certificate of redemption, which was duly recorded December 11, 1895. Tronnes refused to accept the money paid in redemption, of which White was duly advised. The sheriff still holds the funds.

In April, 1892, one Maghan duly obtained a judgment for $14.33 in the municipal court for the city of Duluth, in St. Louis county, against Mary Dowling, the judgment creditor before mentioned. This judgment was duly transcripted and docketed in the office of the clerk of the district court for said county, and was also duly transcripted and docketed in the same office in Polk county. January 2, 1897, by virtue of an execution duly issued upon said judgment, the sheriff of the last-named county levied upon the judgment in favor of said Dowling and against said mortgagors, which had theretofore been assigned, and had been made the foundation of the redemption. A sale upon such execution was thereafter had of the judgment, and at such sale it was sold to one Austin. This was January 29, 1897, and on the same day the mortgagors (judgment debtors) paid the full sum due, and the judgment was satisfied by Austin.

At some time during the year of redemption it was verbally agreed between the mortgagors and Tronnes, the purchaser at the foreclosure sale, that the period of redemption should be extended one year. The cause was tried by the court without a jury.

Upon the facts as stated, the court's conclusions of law were that the $1,500 note and the mortgage securing the same should be canceled and adjudged void, that White never redeemed from the Tronnes foreclosure sale, and that plaintiff was still entitled to redeem the premises from the sale just mentioned.

While it is obvious that, from the very complicated facts, several questions were presented to the court below, we are of the opinion that two only will have to be discussed at this time; the first being raised by assignments of error pertaining to the findings of fact, as

well as to one of the conclusions of law. The question thus raised is whether, upon the facts, the court below was justified in finding that the note for $1,500 was usurious.

It bore interest at the rate of six per cent., although the agreement was that the full amount of the loan should bear interest at ten per cent. The two notes, each for $150, represented the difference between the six per cent. interest evidenced by the coupons, and the ten per cent. stipulated for, this difference being exactly $300. If the contract was tainted with usury, it was because the payment of four-tenths of the interest agreed upon was in part advanced; for $150 became payable in about nine months, instead of being spread out over $2\frac{1}{2}$ years in semiannual payments of $30 each, while the other $150 matured in about 18 months, all thereof being advanced, instead of being spread out in semiannual payments of $30 each, commencing three years from the date of the note. Does this fact alone, in the absence of all other evidence of a usurious intent, establish a corrupt design,—an attempt to evade the law? For there must be an intent to violate the law to constitute usury; and when this intent is wanting the transaction is not usurious, whatever its appearance. Ward v. Anderberg, 31 Minn. 304, 17 N. W. 630; Jackson v. Travis, 42 Minn. 438, 44 N. W. 316. We must answer this question in the negative.

It is true that, by advancing the interest due days as to four-tenths of the ten per cent. agreed upon, the payee of the $1,500 note actually received and secured to itself a slightly greater rate of interest than that permitted by statute; the total sum so reserved and secured, and the total gain to the payee, being less than $30, according to an actual computation, in which interest at ten per cent. is figured upon each anticipated or advanced interest payment from the time of payment until the due days. But this, of itself and alone, will not condemn the transaction as usurious; and, as heretofore stated, this was the only fact tending to establish a corrupt intent. There was no bonus exacted as a condition for making the loan. The full sum of $1,800 was actually paid over to the mortgagor. The mortgagee itself paid the agent's fees or commission. There was no effort made to conceal or cover up any part of the transaction. There was a complete absence of such badges

of an unlawful and forbidden agreement as are usually found about an attempt to receive or secure a usurious rate of interest.

Plaintiff's counsel relies upon the case of Smith v. Parsons, 55 Minn. 520, 57 N. W. 311, as directly in point here. It will be seen that there were several earmarks which characterized that transaction aside from the mere fact that the contract, as agreed upon, resulted in securing to the lender a much greater rate of interest than is permitted by statute. The devices there employed to evade our usury laws were very plain to be seen, and the trial court was quite right when it declared that they were mere covers for usury.

We agree that the findings of fact upon which the court below based its conclusions of law that the note was usurious, and, together with the mortgage, must be declared set aside and canceled, were not warranted by the evidence. The result is that a new trial must be had.

In view of this, it is advisable for us to express our views in relation to the redemption made by White as the apparent owner of the Dowling judgment. Was it valid when made, and, if it was, what effect did the subsequent sale upon execution of this judgment have upon it?

As between the parties these assignments, whereby White finally became the owner, apparently, of the judgment, were valid without being filed or entered as provided by G. S. 1894, § 5431. The statute is for the benefit of such parties as are therein designated, creditors attaching or levying on the same, and subsequent purchasers in good faith for value. As against these parties, unfiled assignments are void, but as to all others the statute is silent. So that at the time White obtained his assignment, and when the redemption was made, he was the absolute owner of the judgment, and was therefore entitled to make the redemption, under the provisions of G. S. 1894, § 6044, and without causing the assignments upon which he relied to be filed or entered in accordance with section 5431, supra. When making redemption, he complied with the statute, section 6042, in every detail. His redemption was therefore valid, and by virtue thereof and of the certificate issued to him by the sheriff he succeeded to the interests acquired in the premises by the purchaser at the foreclosure sale. We are compelled to hold that the re-

demption was valid when made, notwithstanding the provisions found in section 5431.

It is evident that the statute should require a redemptioner who is proceeding under an assignment of a judgment to file such assignment as provided in section 5431. But it does not,—an omission in the statute which the legislature, not the courts, must be called on to supply.

Proceeding then to the next inquiry, what effect upon this valid redemption did the subsequent levy upon and sale of the Dowling judgment have?

It is difficult to suggest upon what ground it could be held that a valid redemption could be invalidated, and White deprived of his perfected title, by means of the subsequent levy and sale of the judgment, unless we should read the provision of section 5431 into the law which provides for redemption by judgment creditors. Through this failure of the mortgagors to redeem from the sale, and the redemption by White in strict compliance with the statute, he had become the absolute owner of the land. His title had become perfect. And this title, it is claimed, must be held to have been forfeited or extinguished by reason of the levy upon, sale of, and subsequent satisfaction of, the judgment. We cannot so hold, but, on the contrary, we are of the opinion that the redemption was not affected by either or any of the steps taken, and that White became and is the fee owner of the real estate.

It is perhaps important to state that there is no merit in plaintiff's contention that the verbal agreement between Tronnes, the purchaser, and himself, whereby he was granted an extension of the period of redemption, could operate in any manner upon White's right to redeem. The purchaser could, if he chose, waive his own rights by such an extension, but he has no control over statutory rights held by a judgment creditor. The rights of the latter are fixed by statute, and a strict compliance with the statutory provision is demanded. There can be no nullification of a creditor's right to redeem by any agreement made between other parties. See Sprague v. Martin, 29 Minn. 226, 13 N. W. 34; Smith v. Buse, 35 Minn. 234, 28 N. W. 220; Todd v. Johnson, 50 Minn. 310, 52 N. W. 864. Possibly it may be inquired what interest the mortgagor may

have in this action, or upon what grounds can he maintain it, if the redemption made by White is valid, and he has become the owner of the land covered by the mortgage in dispute. The answer is that the plaintiff is the maker of the note, and, if it was usurious, he is entitled to maintain an action for its cancellation, without regard to the status of the real property. The present action has assumed that form.

The judgment appealed from, with the findings of fact and the conclusions of law upon which it was predicated, are set aside and vacated, and a new trial granted.

CANTY, J. (dissenting).

I concur in the foregoing opinion, except so far as it holds that the redemption is valid regardless of the fact that the assignments of the judgment on which the redemption was made were never filed in the proper office, and this judgment was afterwards sold on execution against the original judgment creditor. I concede that the redemption was made in strict compliance with G. S. 1894, §§ 6042, 6044, and was valid when made, although the assignments of the judgment were not filed in the clerk's office as required by section 5431. But it does not follow from this that the redemption must always have remained valid. The redemption might be valid when made, and yet be subject to subsequent avoidance if the redemptioner did not protect his title by complying with section 5431. If the agreement to extend the time to redeem had not been made, so that, as between plaintiff and the mortgagee, the title would have passed to the latter, plaintiff would not have had any interest which would entitle him to attack the redemption, because it would then be immaterial to him whether the mortgagee or the redemptioner was the owner of the land. But, by reason of the agreement to extend the time to redeem, plaintiff has an interest which entitles him to attack the judgment creditor's redemption. Section 5431 provides:

"The instrument of assignment of any such judgment shall be filed in the court rendering the judgment, with the files in the action, and an entry thereof shall be made upon the docket; and until so filed, any such assignment shall be void as against creditors levy-

ing upon or attaching the same, and as against subsequent purchasers in good faith for value."

This section is a recording act or registry law, and, like all such laws, it provides that the party who is to blame must suffer. The very reason why he must suffer is that he is to blame in failing to comply with the law. But this plaintiff, the judgment debtor, is not guilty of any failure to comply with this law, while the redemptioner is; and this is the first time I have ever known it to be held, under such a law, that the party who is not guilty must suffer, while the party who is guilty must not suffer.

It cannot be questioned that by reason of the failure of the redemptioner to file the assignments of the judgment a subsequent purchaser of it, in good faith, from Dowling could compel plaintiff to pay it again. Plaintiff has paid it again to the purchaser at the execution sale. If the latter was a purchaser in good faith, for value, without notice, plaintiff was bound so to pay it, and, according to the position of the majority, was, without any fault of his own, bound to pay it twice. Can.the legislature enact a statute which will in this manner deprive a person of his property without due process of law? It is immaterial whether it is done by one statute, or, as in this case, by the combination of two statutes. True, the plaintiff may perhaps recover back from one what he is compelled to pay the other. But can the legislature provide that A. may thus forcibly borrow the money or property of B., when B. is without fault?

It is not necessary here to determine whether the effect which the majority opinion gives to these sections of the statute renders them unconstitutional, as it seems to me that no such unreasonable effect should be given them in any event. This is not a case where one of two innocent persons must suffer by the act of a third, etc., but the case is much stronger. It is a case where either the innocent party or the guilty party must suffer, and, as between these two, it ought not to be difficult to decide the matter.

MITCHELL, J.

As Justice CANTY bases his dissent upon the proposition that, by reason of the failure of the redemptioner to file the assignments

of the judgment, a subsequent purchaser of it in good faith could compel plaintiff to pay it again, I do not wish my assent to that proposition to be inferred from the fact that it is not considered or referred to in the opinion of the court.