HAROLD G. HANSEN AND OTHERS v. S. D. WILMERS AND OTHERS.[1]

February 27, 1925.

No. 24,256.

**Procedure when complaint in garnishment is defective.**

1. A supplemental complaint in a garnishment proceeding is not fatally defective because it merely alleges an indebtedness on the part of the garnishee to the defendant. The garnishee's only remedy is to move that the complaint be made more definite and certain.

**Plaintiff may cross-examine person making garnishment disclosure for corporation.**

2. It is not error to permit the plaintiff to call for cross-examination a person, not an officer or managing agent of a corporate garnishee, who was authorized to make the disclosure and had charge of the papers showing the garnishee's dealings with defendant.

**Garnishee may attach rights of defendant in mortgaged property.**

3. Property arrested by garnishment is subject to all the rights of the garnishee therein. He cannot be compelled to perform his contract with defendant in a manner otherwise than as provided therein, but the defendant's rights in mortgaged property or property upon which the garnishee has a lien may be attached.

**Burden of proof—finding of unconditional indebtedness.**

4. Respondents had the burden of proving that notes and contracts executed in connection with sales of land were accepted in payment of defendant's indebtedness to appellant. The finding that the garnishee was unconditionally indebted to defendant in a stated amount

[1]Reported in 202 N. W. 708.

is not supported by the evidence, but a finding of an unconditional indebtedness in a smaller amount would be justified.

*Headnote 1. See Garnishment, 28 C. J. p. 213, § 274; Pleading, 31 Cyc. p. 644.

Headnote 2. See Witnesses, 40 Cyc. p. 2474 (1926 Anno).

Headnote 3. See Garnishment, 28 C. J. p. 87, § 106; p. 241, § 336; p. 246, § 340.

Headnote 4. See Garnishment, 28 C. J. p. 308, § 465; p. 312, § 469.

Supplemental complaint by the garnishee in an action in the district court for Swift county. The matter was tried before Baker, J., who ordered judgment against the garnishee, the Lowell Investment Company, for $9,526.76. From an order denying its ˙motion for a new trial, Lowell Investment Company appealed. Reversed.

*Hudson & Hudson,* for appellant.

*McCoy & Hansen,* for respondents.

LEES, C.

Respondents sued to recover a money judgment against defendant and commenced garnishment proceedings against appellant. In its disclosure appellant denied liability, but stipulated that respondents might file a supplemental complaint making appellant a party to the action. The complaint was filed, appellant answered, and the issues came on for trial before the court. At the opening of the trial appellant objected to the˙introduction of any evidence under the complaint and moved for judgment on the pleadings. The court denied the motion, received evidence, and made findings in respondents' favor. Appellant moved for a new trial and has appealed from the order denying its motion.

1. The supplemental complaint merely alleged that appellant was indebted to the defendant when the garnishee summons was served; it did not state the facts upon which the conclusion that appellant was indebted to defendant was based, as directed by section 9367, G. S. 1923, but this was not a fatal defect. An allegation in the form of a common count in indebitatus assumpsit is permissible under our system of pleading. Boydstun v. Hackney, 145 Minn. 392, 177 N. W. 779.

The complaint was indefinite in that it did not state how the indebtedness arose, and appellant might have asked to have it made more specific and certain, but this was its exclusive remedy. Dunn. Minn. Dig. § 7648.

2. The garnishee's disclosure was made by M. A. Overlie. He appeared at the trial and was called for cross-examination by respondents. Appellant objected on the ground that Mr. Overlie was not one of its officers or managing agents. Appellant's president was ill when the disclosure was made and, at his request, Mr. Overlie appeared for him and testified that he was the agent of the president and of the appellant and had charge of the papers showing appellant's dealings with defendant. On the authority of Bennett v. E. W. Backus Lbr. Co. 77 Minn. 198, 79 N. W. 682, we hold that the court did not err in permitting respondents to cross-examine Mr. Overlie.

3. The court found that at the time of the garnishment appellant was unconditionally indebted to defendant in the sum of $11,151.57, and gave respondents judgment for $9,526.76, that being the amount of the judgment they had recovered against defendant. The principal contention is that the evidence does not support this finding.

Briefly stated, these are the facts: In May, 1919, appellant sold and agreed to convey to defendant 6 separate tracts of land in Swift county containing in all 840 acres. The purchase price was $61,220, of which $2,000 was paid in cash. The balance was payable in instalments; $17,500 on March 1, 1920; $5,610 on March 1, 1921; $5,610 on March 1, 1922; and $30,500 by giving or assuming mortgages on the separate tracts, to become due at such times and to bear such rates of interest as should be agreed upon by the parties. The contract, designated as Exhibit B, was in the usual form in use in Minnesota, but contained a special provision of importance in this case: It reads thus:

"Upon sale of any of the above described lands said party of the second part hereby agrees to turn over to the party of the first part eighty per cent (80%) of cash received, which will be endorsed upon the first payment to become due and if contract is acceptable

to the party of the first part the balance due thereon shall be endorsed on this contract in proportion to the several deferred payments, and if not acceptable, shall be held by it as collateral to this contract."

All the land was sold soon after the contract was executed. The vendees received contracts for deed in the usual form. Five of the contracts were executed by appellant as vendor and one by defendant. The vendee in one contract had paid for his land in full before the garnishee summons was served; in most of the other contracts the vendees were in default. Upon all the contracts appellant had received in cash approximately $19,500 exclusive of interest on deferred payments. It had also received approximately $40,000 in cash by having mortgages placed on part of the land and by discounting, at a bank, notes taken from one of the vendees. No part of the money received was credited to defendant upon its contract with appellant. Evidence was received to the effect that appellant disposed of all the land covered by Exhibit B without consulting defendant and treated the proceeds of the sales as its own to use as it saw fit; other evidence is to the effect that nothing was done without the mutual consent of the parties. The record contains no direct evidence that either the contracts for the sale of the lands or the notes the vendees gave were ever treated as the equivalent of money or unequivocally accepted by appellant in part payment of the amount due from defendant under Exhibit B. Throughout the trial Mr. Overlie consistently adhered to the statement that everything appellant received from the vendees was taken and held as collateral security for the performance by defendant of Exhibit B.

But respondents contend that, after dealing as it did with the land, notes and contracts, appellant cannot now be heard to say that it has not been paid all that was due upon Exhibit B. They urge that the unpledged securities held when the garnishee summons was served represent an indebtedness from appellant for which defendant might have recovered a money judgment, hence they too may have such a judgment.

Under our practice property is arrested by garnishment subject to all the rights of the garnishee therein, Dun. Minn. Dig. §§ 3955, 3984. The plaintiff cannot compel the garnishee to perform his contract with the defendant in a manner otherwise than as provided by the contract, Bacon v. Felthous, 103 Minn. 387, 115 N. W. 205, but may attach by garnishment a debtor's right to redeem mortgaged property or property upon which the garnishee has a lien for an unliquidated amount. Section 9376, G. S. 1923; Becker v. Dunham, 27 Minn. 32, 6 N. W. 406; Trunkey v. Crosby, 33 Minn. 464, 23 N. W. 846.

4. The court charged appellant on the theory that defendant was its creditor and not as the possessor of property belonging to defendant. If the defendant had sued on that theory, appellant could have asserted its right under Exhibit B to apply thereon the money received as the result of the transactions detailed and, of course, it could assert the same right against respondents. There is no evidence which would warrant a finding that appellant has received more money than was due from defendant upon the contract, and so we come back to the original question, viz: Was the court justified in charging appellant on the theory that its conduct evinced an intention to accept the notes of the vendees or the contracts for the resale of the land as the equivalent of cash? If it did, it might follow that the whole of defendant's indebtedness was satisfied and that the difference between the face value of the obligations and the amount due from defendant upon the contract was a present indebtedness which appellant could be compelled to pay. Our examination of the record leads to the conclusion that such a holding is not justified by the evidence; that at most appellant could be charged only with the money it actually received, and that respondents failed to sustain the burden of proving an unconditional existing indebtedness on the part of appellant. The acceptance of a note in payment of an existing debt, in the absence of an express agreement that it is taken in satisfaction of the debt, is only a conditional payment. The same rule applies whether the note is that of the debtor or a third person, and in either case the burden of proving the agreement is upon him who asserts it. Dun. Minn. Dig. § 7444.

In addition to the transactions thus far mentioned, the parties had other dealings. There was evidence which would justify the court in finding that appellant owned or had options for the purchase of four tracts of land not covered by Exhibit B; that it listed these lands with defendant for sale under an agreement that for its services defendant should receive, on March 1, 1920, one-half of all the land sold for over and above the price at which it was listed; that defendant was employed to find and did find buyers, who purchased the land on terms acceptable to appellant and from whom it received large sums of money; that it holds their contracts for the payment of the remainder of the purchase price; and that the net profits of these sales, computed by adding the face value of the contracts appellant accepted and the cash received, amount to $13,369.26, of which defendant's one-half is $6,684.63.

Appellant contends that defendant is not entitled to receive its share of the profits before the purchasers pay for their land in full. There was sharp conflict in the evidence bearing on this point and a question of fact was presented for the determination of the trial court. A finding that defendant became entitled to the payment in cash of its share of the profits as soon as contracts satisfactory to appellant were made with the purchasers whom defendant produced, and that defendant need not wait until the last dollar due on the contracts is collected, would be well supported by the evidence, hence the court was justified in finding an existing indebtedness of at least $6,684.63, which was payable unconditionally. However, respondents were given judgment for a greater amount and, for the reasons heretofore stated, this was error.

[The motion for a new trial should have been granted as to the first branch of the case, or the findings should have been amended. We note that there was no motion to amend, but it will be within the discretion of the court to entertain such a motion if either party sees fit to make it when the case is remanded. On the going down of the remittitur, the court will either amend the findings or try all or part of the issues de novo.] See page 145 for substituted order.

The order denying a new trial is reversed and the case remanded for further proceedings in accordance herewith.

STONE, J., took no part.

On March 20, 1925, the following order was filed:

PER CURIAM.

After the opinion herein was filed, upon a showing that after the appeal was taken, to-wit, on July 14, 1924, the respondents caused judgment to be entered upon the findings in the court below, for the reason that appellant had failed to give a bond as required by section 9500, G. S. 1923, the respondents moved for a modification of the opinion and of the mandate to be issued to the district court.

The motion having been heard and considered, it is ordered that the portion of the opinion which directs how the case shall be disposed of when it goes back to the district court is amended by substituting therefor the following directions:

On the going down of the remittitur, there will be a retrial only of the issue as to appellant's liability as garnishee under the contract identified in the record as Exhibit B. Pending the final determination of that issue, the judgment entered on the findings will remain in full force and effect, but the enforcement thereof by execution or otherwise will be stayed to await the outcome of the retrial hereby directed. Upon the final determination of the issue to be retried, if the respondents prevail, the judgment will be modified if necessary so as to conform to such determination. If they do not prevail, the judgment will be reduced to $6,684.63, with interest on that sum from the date of the entry of the judgment. Costs in the court below will abide the final determination of the case.