# RAYMOND T. WETSEL AND ANOTHER v. GUARANTEED MORTGAGE COMPANY AND ANOTHER.[1]

November 29, 1935.

No. 29,817.

 

*R. H. Fryberger*, for appellants.

*Stinchfield, Mackall, Crounse, McNally & Moore*, for respondents.

HILTON, JUSTICE.

Plaintiffs sought to have a loan made by them of defendants declared null and void as usurious. This is an appeal from a judgment and decree in favor of defendants.

On April 23, 1927, plaintiffs, owners as joint tenants, of a four-plex apartment building, with the lots upon which it stood, in the city of Minneapolis, made a written application to the White-Price Company, a corporation, to secure for them a loan of $15,000. The White-Price Company submitted the application to the defendant Guaranteed Mortgage Company, a corporation. The loan was made by the latter concern, and the plaintiffs executed and delivered to it a note for $15,000 with interest thereon at the rate of 6½ per cent per annum, secured by a first mortgage on the property. The plaintiffs agreed to pay the White-Price Company a commission of 7.8 per cent amounting to $1,170, erroneously figured at $1,180, for negotiating the loan, and the paying of certain necessary expenses thereon. The plaintiffs, not having the money to pay said sum,

[1]Reported in 263 N. W. 605.

executed and delivered to the White-Price Company a note for the $1,180, secured by a second mortgage on the property in question. Plaintiffs contracted to repay both notes at the rate of $162 a month for 144 months, the smaller of the two notes to be paid at the rate of $81 per month out of the first 15 payments, the balance of the monthly payments to be applied on the larger loan.

The active officers of the White-Price Company were also the active officers of the Guaranteed Mortgage Company. The stock control of both companies was in Mr. Price and Mr. White. The two companies had the same general office space and had a working arrangement as to the payment of office expense. There was no evidence of any agreement or understanding that either company had any interest in the profits or commissions of the other.

Plaintiffs made but one payment, $162, which was due and taken out at the time the loan was made. Because of continued default, the second mortgage was foreclosed on February 17, 1928, by the White-Price Company and the property bid in by it for the full amount then due and owing. Several months later the sheriff's certificate of foreclosure was sold by the White-Price Company to the Guaranteed Mortgage Company. There has been no redemption.

The title of one of the lots on which the four-plex stood was registered. After the year for redemption had expired the Guaranteed Mortgage Company made application to the district court for a new certificate of title upon that lot. Plaintiffs, as parties in interest, filed objections thereto. Thereafter such negotiations were had with plaintiffs that the objections were withdrawn and an option to purchase the property was given to the plaintiff Ethel D. Wetsel, at that time Ethel D. Graves. A certificate of title was duly issued to the Guaranteed Mortgage Company, from which no appeal was ever taken. Subsequently the plaintiffs brought an action against the White-Price Company and the Guaranteed Mortgage Company to set aside the foreclosure proceedings on the ground that the proceedings were defective. Thereafter the plaintiff Raymond T. Wetsel was given an option to purchase the property, and in consideration thereof that action was dismissed with

prejudice by the plaintiffs, who executed a quitclaim deed to the entire property. The options were never exercised.

Approximately one year after the redemption period had expired, and while plaintiffs were still in possession of the property, the defendant The Business Company, a subsidiary corporation of the Guaranteed Mortgage Company, and to whom an unrecorded deed to the property had been given by the Guaranteed Mortgage Company, brought an action in unlawful detainer against plaintiffs to obtain possession of the property. Thereafter the action with which we are here concerned was instituted by plaintiffs to set aside the entire transaction on the ground that it was usurious, and in connection therewith application was made to enjoin the defendants from taking possession of said property and from proceeding in said unlawful detainer action. The defendants were enjoined temporarily from so proceeding pending the decision of this case.

Plaintiffs admitted that of the $1,180 to be paid to the White-Price Company $610 was legitimate expense for title insurance, policy guaranteeing payment of loan, etc., which did not inure to the benefit of either the White-Price Company or the Guaranteed Mortgage Company. However, plaintiffs contend that the relationship between those two companies was such that the Guaranteed Mortgage Company actually received the benefit of $570 out of the $1,180, and that the entire arrangement of the two companies was set up merely for the purpose of avoiding the state usury laws. Defendants claim (without conceding) that even if it be assumed that there was such a relationship, and that $570 of the amount did inure to the benefit of the Guaranteed Mortgage Company, the transaction was not usurious.

It is an essential element of usury that the lender must intend to receive more in return for the loan than the law allows. Ward v. Anderberg, 31 Minn. 304, 17 N. W. 630; Patterson v. Wyman, 142 Minn. 70, 170 N. W. 928. The Guaranteed Mortgage Company, before it commenced business operations, received from certified public accountants schedules setting out the monthly payments that could be required over a term of years on loans, such as here involved, and not be violative of the state usury laws. Furthermore,

advice was obtained from reputable counsel as to the legality and sufficiency of its proposed setup. On counsel's advice, plans, such as used in the Wetsel transaction, were worked out. Plaintiffs' suggestion that all these precautions were taken in order to evade the usury law is not tenable. Had that been the purpose no advice would have been needed. Of course "if * * * the parties intentionally provide for a greater compensation for the use of the money than the law allows, the intent is presumed." Hatcher v. Union Trust Co. 174 Minn. 241, 244, 219 N. W. 76, 78; 11 Minn. L. Rev. 70. However, where a transaction is entered into in good faith, with no purpose to evade the usury laws, it will be upheld. Barry v. Paranto, 97 Minn. 265, 106 N. W. 911, 7 Ann. Cas. 984; Swanson v. Realization & Debenture Corp. 70 Minn. 380, 73 N. W. 165. The precautions taken by the Guaranteed Mortgage Company indicate a purpose to act in good faith. There is no evidence of an intent to exact usury. The decision of this case need not, however, rest entirely upon that ground.

In Smith v. Parsons, 55 Minn. 520, 57 N. W. 311, a contract called for the repayment in full of a $20,000 loan, with interest, and in addition thereto the borrower, previous to the time the full amount of the loan was received and as part of the transaction, gave to the lender a bonus of $1,000 cash and rendered to him services worth $500. In the instant case the borrowers actually received $15,000 in cash, for which a note for that amount secured by a first mortgage was given, and in addition thereto the plaintiffs gave a smaller note for $1,180 secured by a second mortgage. This latter note was not payable to the lender of the $15,000. In Smith v. Parsons, 55 Minn. 520, 57 N. W. 311, the court found that the net amount loaned was only $18,500 ($20,000 less the $1,000 cash bonus and the services worth $500). Plaintiffs argue that on the basis of the rule established by this court in that case, the Guaranteed Mortgage Company did not loan $15,000 but only $15,000 less the $570 (i. e., the $1,180 less the $610 legitimate expenses hereinbefore referred to) or $14,430. To repay this amount at the rate of $162 a month for 144 months is claimed to be usurious. There is a distinction between the facts of this case and those in Smith v. Par-

sons, 55 Minn. 520, 57 N. W. 311, even if it is assumed, without deciding, that the $570 did inure to the benefit of the Guaranteed Mortgage Company.

To be usurious a contract must be so when made. In Smith v. Parsons, 55 Minn. 520, 526, 57 N. W. 311, the court stated:

"When the agreement exacts from the borrower a 'bonus' to be paid the lender for making the loan, that, on the question of usury, must be taken out as of the date when it is to be paid by the terms of the agreement."

Thus the real question here resolves itself into a determination of the time the commission, or bonus, if it may be called that, was to be paid. By the terms of the contract, the $1,180 was not payable at the date the $15,000 was loaned but at a later time.

Plaintiffs contend that the giving of the note for the $1,180 was the same as payment; therefore the $570 fee should be subtracted from the $15,000 in computing the rate of interest charged. However, in Minnesota the rule is that a promissory note does not act as payment to discharge a debt or obligation unless agreed to be so given and received, and the burden is upon the party asserting it to establish that a note was so taken, the presumption being to the contrary. Geib v. Reynolds, 35 Minn. 331, 28 N. W. 923; Hirleman v. Nickels, 193 Minn. 51, 258 N. W. 13; Hansen v. Wilmers, 162 Minn. 139, 202 N. W. 708. The fact that the note in question was secured by a mortgage does not alter the situation. Combination S. & I. Co. v. St. Paul City Ry. Co. 47 Minn. 207, 49 N. W. 744; see Geib v. Reynolds, 35 Minn. 331, 28 N. W. 923. If plaintiffs' argument were valid, then with equal justification it could be contended that the $15,000 debt was paid immediately at the time the loan was made as a note also was given therefor. That such an argument is fallacious readily appears when it is realized that in the absence of an agreement to the contrary the holder of a promissory note may sue, when the note becomes due, either upon the note itself or upon the original transaction. Combination S. & I. Co. v. St. Paul City Ry. Co. 47 Minn. 207, 49 N. W. 744. It is evident in this case that the note in question was not taken as absolute

payment. Therefore nothing should be subtracted from the $15,000 in computing whether payments of $162 each for 144 months on that amount constitute usury.

The trial court in a memorandum attached to and made a part of the findings of fact and conclusions of law stated:

"The certified public accountants testifying in behalf of the defendants and applying the rule commonly designated as the 'United States Rule' in the computations to determine the rate of interest which the lender received on the $15,000 loaned in accordance with the terms of the two notes, stated that it would be less than eight dollars on a hundred dollars for each year, that is less than eight per cent. This would seem to be the correct and proper rule for computation."

That finding is not disputed if the rate is computed on the full $15,000. Thus, even if the Guaranteed Mortgage Company should receive for its own exclusive benefit every one of the 144 payments of $162 each, it would not be obtaining a greater return than eight per cent (the maximum rate permitted in Minnesota) on the $15,000 loan. Whether usury exists depends upon what the lender receives. Lassman v. Jacobson, 125 Minn. 218, 146 N. W. 350, 51 L.R.A. (N.S.) 465, Ann. Cas. 1915C, 774; Temple v. Davis, 115 Minn. 328, 132 N. W. 257. Here the lender was not to receive a usurious rate.

Affirmed.