In re Paul C. SUNDE and Susan
P. Sunde, Debtors.

Michael S. DIETZ, Trustee, Plaintiff,

v.

Merle T. PHIPPS and Dorothy
Phipps, Defendants.

Bankruptcy No. 3–92–1301.
Adv. No. 3–92–109.

United States Bankruptcy Court,
D. Minnesota,
Third Division.

Dec. 28, 1992.

Michael S. Dietz, Dunlap, Finseth, Berndt & Sandberg, Rochester, MN, for plaintiff.

Ted E. Deaner, O'Brien, Ehrick, Wolf, Deaner & Maus, Rochester, MN, for defendants.

## ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

GREGORY F. KISHEL, Bankruptcy Judge.

This adversary proceeding came on before the Court on August 12, 1992, upon the parties' cross-motions for summary judgment. The Defendants appeared by their attorney, Ted E. Deaner. The Plaintiff appeared on behalf of the bankruptcy estate. Upon the moving and responsive documents, their supporting affidavits, and the arguments of counsel, the Court makes the following order.

The Debtors filed a voluntary petition under Chapter 7 on March 4, 1992. Before their bankruptcy filing, they operated a retail hardware store in Blooming Prairie, Minnesota, apparently through the instrumentality of a corporation named "Blooming Prairie Hardware, Inc." The Plaintiff is the trustee of their bankruptcy estate.

In August, 1990, Debtor Paul Sunde solicited a loan from the Defendants, intending to infuse the proceeds as capital into his business. He disclosed the purpose for the loan to the Defendants at that time. He proposed, and both Debtors voluntarily offered, an interest rate of 15 percent on the proposed principal amount of $25,-000.00. Neither Defendant proposed or negotiated any particular interest rate for the loan, but they accepted the Debtors' offer. The Debtors obtained the forms for a promissory note and real estate mortgage from First Prairie Bank in Blooming Prairie; an employee of the bank completed the documents using the terms that the Debtors and the Defendants had specified. On August 31, 1990, the Debtors executed the note, in the face amount of $25,000.00 and with the 15 percent annual rate of interest, and a mortgage instrument. Via the latter, they granted the Defendants a junior mortgage against the real estate in which the hardware store was located. Ultimately, the Debtors made ten monthly payments under the note to the Defendants, of $594.75 each.

When they arrived at the terms of the loan and executed the instruments evidencing it, none of the four parties were aware of the ceilings that Minnesota statute placed on the interest rates to be charged on business loans; nor did they know that the 15 percent rate upon which they had agreed could be subject to a claim of usury. None of them harbored a willful intent to violate the Minnesota usury laws in the transaction. The Debtors have never objected to the interest rate set forth in the note, and now maintain that they never would have objected to it or raised usury as a defense to collection, even had they known that the rate was contrary to law.

After his appointment, the Plaintiff sued out this adversary proceeding to obtain an adjudication that the note's interest rate violates Minnesota law. As relief, he requests a money judgment in the amount of two times the interest heretofore paid by the Debtors to the Defendants, the voiding of all further liability on the note, and an avoidance of the real estate mortgage granted to secure the loan.

Both sides now move for summary judgment. They both maintain, and the Court agrees, that there is no genuine issue as to any material fact going to Plaintiff's claim of usury; as a result, this adversary proceeding is amenable to judgment in favor of one side or the other, as a matter of law. *See* FED.R.CIV.P. 56(c), *as incorporated by* BANKR.R. 7056.[1] The motions raise four points of law, three of which are in controversy.

**A. Whether the Interest Rate Exceeded the Maximum Legally Allowed.**

On August 31, 1990, MINN.STAT. § 334.-011 subd. 1 provided, in pertinent part, as follows:

> Notwithstanding the provisions of any law to the contrary a person may, in the case of a contract for the loan or forbearance of money, goods, or other things in action in an amount of less than $100,000 for business ... purposes, charge interest at a rate of not more than four and one-half percent in excess of the discount rate on 90 day commercial paper in effect at the Federal Reserve bank in the Federal Reserve district encompassing Minnesota.
>
> For the purposes of this subdivision, the term "business" means a commercial or industrial enterprise which is carried on for the purpose of active or passive investment or profit.

On August 31, 1990, the discount rate in question was 7 percent per annum. *Affidavit of David Levy*, Vice–President and Corporate Secretary of the Federal Reserve Bank of Minneapolis (as filed on August 4, 1992). The maximum interest rate on business loans allowed under MINN.STAT. § 334.011 subd. 1, then, was 11.5 percent per year. The Defendants do not deny that

---

1. This rule provides, in pertinent part, that upon a motion for summary judgment,

 [t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the [supporting] affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

the note in question was subject to the statute; nor do they deny that it provided for a rate of interest in excess of that allowable under the Minnesota statute. However, they do sharply contest the consequences to be given to that documentary fact.

### B. Whether the Defendants Harbored the Requisite Intent.

■ While acknowledging that their transaction with the Debtors technically violated the usury laws, the Defendants maintain that they may not be held liable for the infraction. They point to the uncontroverted fact that they neither knew the legal limits on interest, nor intended to violate the law by extracting the rate of interest they did. This, they say, prevents the Plaintiff from proving one of the essential elements of his usury claim.

■ Under Minnesota law, a party asserting a violation of the usury laws must prove four elements:

1. A loan of money or forbearance of debt;
2. An agreement between the parties to the loan or forbearance, that the principal shall be repayable absolutely;
3. The exaction of a greater amount of interest or profit than is allowed by law;
4. The presence of an intention to evade the law at the inception of the transaction.

*Citizen's Nat'l Bank of Willmar v. Taylor,* 368 N.W.2d 913, 918 (Minn.1985); *Rathbun v. W.T. Grant Co.,* 300 Minn. 223, 230, 219 N.W.2d 641, 646 (1974); *Schauman v. Solmica Midwest, Inc.,* 283 Minn. 437, 439, 168 N.W.2d 667, 669–670 (1969). For these motions, the Defendants do not contest that the Plaintiff has satisfied the first three elements—so it does, indeed, come down to the issue of intent.

■ Sixty years ago, the Minnesota Supreme Court summed up its prior cases on the intent required to make out a usury violation, by noting that it had held in them that "... there must be a corrupt intent on the part of the lender or the one who grants credit or forbearance." *Cemstone*

*Products Co. v. Gersbach,* 187 Minn. 416, 419, 245 N.W. 624, 625 (1932). In further defining "corrupt intent," however, the *Cemstone Products* court acknowledged that the modifying adjective in this nomenclature could be read too broadly:

> The corrupt intent, in such a case, *if we so call it,* consists in the intent to take or receive more for the forbearance of money than the law permits, and this is true *whether or not the taker knows he is violating the usury law.*

187 Minn. at 419, 245 N.W. at 625 (emphasis added). Under this refinement, then, the complainant need not prove that the lender knew that it was charging a usurious rate. *Citizens Nat'l Bank of Willmar v. Taylor,* 368 N.W.2d at 919. The intent element can be satisfied merely by proof that the lender intended to enter into the specific transaction in question. A lender may prove that it lacked an awareness of the legal limits on interest rates, but this will not prevent a finding on the element in favor of the borrower. Neither will a lack of evidence that the lender knowingly intended to violate the law.

■ To be sure, the Minnesota courts have recognized a limited exception, formulated as follows:

> ... where a transaction is entered into in good faith, with no purpose to evade the usury laws, it will be upheld.

*Wetsel v. Guaranteed Mortgage Co.,* 195 Minn. 509, 512, 263 N.W. 605, 606 (1935). In *Wetsel,* the Minnesota Supreme Court affirmed the trial court's conclusion that the plaintiffs had not satisfied the intent element. In so doing, it pointed to the fact that the corporate defendant had done things to try to prevent exposure under the usury laws, before it had commenced lending operations. Specifically, it had consulted certified public accountants to obtain amortization schedules for loans, so as to be informed of the amounts it could legally demand for monthly payment from its borrowers. It also had consulted legal counsel "as to the legality and sufficiency of its proposed setup," and had worked out general "plans" for lending and investment transactions such as the ones it entered

into with the plaintiffs. The *Wetsel* court concluded that:

> [t]he precautions taken by the [lender] indicate a purpose to act in good faith. There is no evidence of an intent to exact usury.

195 Minn. at 512, 263 N.W. at 606.

Later Minnesota decisions have made it clear that a lender does not qualify for this exception by merely making a self-serving plea of "pure heart and empty head"—it must have affirmatively demonstrated good faith by taking "precautionary action" *before entering into the transaction. Rathbun v. W.T. Grant Co.,* 300 Minn. at 236, 219 N.W.2d at 650. The only such precautionary action that the Minnesota courts have recognized is the submission of the proposed transaction to qualified third parties for review of its propriety. *Wetsel, supra; Washington Fed. Savings & Loan Ass'n of Stillwater v. Baker,* 374 N.W.2d 786, 788 (Minn.Ct.App.1985), *rev. denied* (Minn. December 13, 1985).

The state of mind that the Defendants set up in their defense is an uncontested fact, but it simply does not qualify for this exception. No one—least of all the Defendants—consulted third parties about the legal niceties of the loan.[2] The Defendants intentionally loaned money at an explicitly-stated rate of interest that was greater than that allowed under statute. This satisfies the intent element under binding caselaw precedent.[3] With this conclusion, the Plaintiff has legally established that the Defendants violated MINN.STAT. § 334.-011 subd. 1.

### C. Whether Plaintiff is Estopped From Enforcing Remedies Under the Usury Laws.

In the alternative, the Defendants argue that the Plaintiff is barred from enforcing the usury laws against them, under two related state-law theories.

■ The Plaintiff, of course, holds the cause of action in this proceeding as a successor-in-interest to the Debtors; their right of action under the Minnesota usury laws passed into their bankruptcy estate by operation of 11 U.S.C. § 541(a)(1).[4] *See In re Medill,* 119 B.R. 685, 694 (Bankr. D.Minn.1990), *as certified on appeal,* 477 N.W.2d 703 (Minn.1991); *In re Carlson,* 40 B.R. 746, 749–750 (Bankr.D.Minn.1984). They did not claim it as exempt, so it is subject to the Plaintiff's administration. In the Plaintiff's hands, however, the right of action is subject to all of the same defenses, counterclaims, and legal infirmities to which it was subject in the hands of the Debtors. *In re Giorgio,* 862 F.2d 933,

---

2. The Debtors seem to have used the Blooming Prairie bank employee as a mere scrivener, probably just to ensure that the right information went into the right blanks on the pre-printed forms which the parties used. There is no evidence that the employee rendered any advice or reviewed the merits of the transaction.

3. Counsel devoted much of their brief and argument to the question of whether the holdings in *Citizens Nat'l Bank of Willmar v. Taylor* and *Washington Fed'l. Savings & Loan Ass'n. v. Baker,* were irreconcilable. The Defendants' counsel's argument is correct in its result—they are not. However, as noted, *Washington Federal* merely acknowledges the limited exception long-recognized under *Wetsel* and its predecessors. The Defendants' counsel argued at length that *Washington Federal* recognized a presumption of the requisite intent, that arises from proof that the parties intended to close on a transaction with the intent to close on a transaction with the interest rate in question, and argued that this presumption is rebutted by evidence of the lender's subjective good faith. There is authority for the existence of such a presumption. *See Wetsel,* 195 Minn. at 512, 263 N.W. at 606 (citing *Hatcher v. Union Trust Co. of Maryland,* 174 Minn. 241, 244, 219 N.W. 76, 78 (1928)). The use of the word "presumed" in these decisions is somewhat unfortunate, as they do not then use the legal vocabulary governing presumptions to identify whether this one is rebuttable, and by what proof. To the extent that the good-faith exception bears on the operation of this presumption, though, it does so to much more limited effect than argued by the Defendants. The mere assertion of contemporaneous "good faith" and lack of "illegal" intent does not trigger the exception; only past acts of the requisite character do.

4. This statute provides, in pertinent part, as follows:

> The commencement of a case under ... [the Bankruptcy Code] creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:
> (1) ... all legal or equitable interests of the debtor in property as of the commencement of the case ...

936 (1st Cir.1988); *In re Gebco Investment Corp.*, 641 F.2d 143, 146 (3d Cir.1981). *See also, in general, In re Schauer*, 835 F.2d 1222, 1225 (8th Cir.1987) (bankruptcy estate takes contract rights, rights to payment, and intangibles of debtor subject to same conditions and limitations imposed on them by contract or statute that limited them prepetition).

Building on this basic precept of bankruptcy law, the Defendants argue that two variants of the equitable defense of estoppel would have barred the Debtors from enforcing usury remedies against the Defendants; hence, they maintain the Plaintiff is barred as well. To support this defense, the Defendants point to the uncontroverted facts that the Debtors instigated the loan transaction in question by uninvited solicitation; that Paul Sunde took the initiative on the question of the interest rate in his discussions with the Defendants, proposed the one adopted, and fully structured the terms of the loan; and that the Defendants were "passive participants" in the transaction. Citing *Utterberg v. Cameron*, 282 N.W.2d 536 (Minn.1979) and *Lukens v. Hazlett*, 37 Minn. 441, 35 N.W. 265 (1887), the Defendants' counsel notes that the policy behind usury statutes is "to protect from avaricious moneylenders those whose need to borrower [sic] renders them powerless to resist." *Defendants' Memorandum for Summary Judgment* at 7 (as filed on July 14, 1992). He argues that this policy goal has no function where, as here, the ostensible victims actually structured the transaction, without prompting—let alone coercion—from the alleged oppressors. This fact, the Defendants maintain, should now bar the Plaintiff, as the Debtors' successor-in-interest, from recovery. They rely on two related theories.

### 1. Equitable Estoppel.

The Minnesota Supreme Court has defined the elements of equitable estoppel in at least two formulations. In the simpler, the party seeking to bar another party from asserting claims or defenses must prove three elements:

1. that promises or inducements were made;

2. that the party invoking the doctrine reasonably relied upon the promises; and

3. that the invoking party will be harmed if estoppel is not applied.

*Hydra–Mac, Inc. v. Onan Corp.*, 450 N.W.2d 913, 919 (Minn.1990); *In re Johnson*, 139 B.R. 208, 218 (Bankr.D.Minn. 1992). In the more involved one, the elements are specified as:

1. A past misrepresentation of a material fact;

2. Knowledge of the falsity of the representation, on the part of the party to be estopped;

3. Intent on the part of the party to be estopped, to induce reliance upon the misrepresentation;

4. Lack of knowledge of the true facts on the part of the invoking party; and

5. Reliance by the invoking party upon the misrepresentation, to its detriment.

*TransAmerica Ins. Group v. Paul*, 267 N.W.2d 180, 183 (Minn.1978). Though one is more detailed than the other, the two formulations are identical in their core requirements.

 The Defendants' counsel is technically correct in noting that estoppel is a broad equitable doctrine, the application of which is subject to the discretion of the court, and which must turn on the specific facts of each case. *E.g., Evans v. Govt. Employees Ins. Co.*, 257 N.W.2d 689, 693 (Minn.1977). *See also Scott County v. Advance Rumley Thresher Co.*, 288 F. 739, 750 (8th Cir.1923) (applying Arkansas law). However, the extant Minnesota cases all require some type of manifested commitment to a specific fact, undertaking, or structure of legal rights and duties. That commitment may be overt, *Browning v. Browning*, 246 Minn. 327, 331, 76 N.W.2d 100, 103 (1956), expressed by act, *id.*, or evidenced by silence in the face of a duty to communicate, *id.*, and *Thorson v. Rice County District 1 Hospital*, 437 N.W.2d 410, 415 (Minn.1989), but it must be proved up. Further, under the second element noted in *TransAmerica Ins. Group v. Paul*, the invoking party must demonstrate

that the party to be estopped had actual knowledge of the material fact, *State ex rel. Caffrey v. Metropolitan Airports Comm'n,* 310 Minn. 480, 488, 246 N.W.2d 637, 642 (1976), and *In re Johnson,* 139 B.R. at 218–219, or at least was culpably negligent in not having that knowledge, *Kavalaris v. Cordalis,* 219 Minn. 442, 448, 18 N.W.2d 137, 139 (1945). *Culpable* negligence is defined as:

> Failure to exercise that degree of care rendered appropriate by the particular circumstances, and which a man of ordinary prudence in the same situation and with equal experience would not have omitted.

BLACK'S LAW DICTIONARY at 931 (5th ed. 1979). The element is not satisfied by proof that the party to be estopped acted out of ignorance or mistake. *Johnson v. Giese,* 231 Minn. 258, 265, 42 N.W.2d 712, 716 (1950).

■ A few courts have examined the knowledge element of estoppel in the context of a usury claim. Where a borrower asserting a violation of the usury laws knew of the violation before undertaking the transaction, and used that knowledge to take advantage of the lender, the borrower is estopped. *Nelson v. Dorr,* 239 Minn. 423, 433, 58 N.W.2d 876, 882 (1953). However, as the Washington Court of Appeals has noted in addressing this defense,

> ... the borrower must be guilty of fraudulent conduct in interjecting the usurious rate of interest into the transaction before he will be estopped to defend on grounds of usury.

*Liebergesell v. Evans,* 23 Wash.App. 357, 597 P.2d 908, 912 (1979).

■ Here, under the established facts, the Debtors would not have been estopped from asserting usury remedies against the Defendants, so the Plaintiff is not either. In its essence, equitable estoppel prevents a party from "having it both ways." If a party has knowingly and intentionally committed itself to a position which was not in its own best interest, legally or factually, it may not later insist upon a strict legal enforcement of the rights which it would have had in the absence of the commit-

ment. Inherent in the defense, however, is a requirement of scienter: the party to be estopped must have been aware of its rights under law, and proceeded, intentionally and with that knowledge, to forgo those rights. *In re Johnson,* 139 B.R. at 218–219.

This simply did not happen here. The Debtors had no knowledge of the legal ceiling on the rate of interest which the Defendants could charge, and no awareness that they could insist upon that ceiling. Nor, at any point, did the Debtors make any representation going to the *legality* of the interest rate which Paul Sunde proposed to the Defendants; their only representation was of their willingness to pay it. In an application of equitable estoppel to a usury claim, the *material* representation necessarily goes to the legal propriety of the interest rate. The willingness of the borrowers to pay the interest to be exacted does not go to any of the four elements of actionable usury; it simply is not material. The Debtors neither made an affirmative attempt to misrepresent the interest rate, nor intentionally failed to disclose the usurious character of the interest rate which they suggested. The Plaintiff, then, is not equitably estopped from asserting usury remedies.

### 2. Promissory Estoppel.

■ Noting that equitable estoppel need not invariably be predicated on a misrepresentation of past or present fact, the Minnesota Supreme Court has recognized a variant on the doctrine:

> Estoppel may be promissory. An estoppel may be predicated on a promise of future action relating to the intended abandonment of existing rights.

*Albachten v. Bradley,* 212 Minn. 359, 362–363, 3 N.W.2d 783, 785 (1942). As with the broader doctrine, the party asserting promissory estoppel must have relied in good faith on the promise and have changed its position to its detriment, as to the subject matter of the promise. *Id.*

This defense fails as well, again for the Defendants' failure to prove that the Debtors made the predicate, material promise to

them. The only promise which conceivably could trigger promissory estoppel in the present context is one going to the borrower's future prospect of raising a usury claim or defense. The Debtors made no such promise; the parties' colloquy was silent on the issue. The Plaintiff, as a result, is not barred by promissory estoppel either.

### 3. Conclusion, on Estoppel Issues.

The usury laws function as a regulatory device, which may be imposed long after the fact of the subject transaction to achieve the goal of the law. Countenancing either form of the estoppel defense in circumstances like the ones presented here would wholly undercut this purpose. The Defendants cannot avoid liability to the Plaintiff on this ground.

### D. Whether the Plaintiff is Entitled to the Remedies He Seeks.

The final question is the legal consequence of the Defendants' violation of the usury laws. The Plaintiff requests two forms of relief: a money judgment against the Defendants in an amount equal to two times the amount of interest actually paid by the Debtors, plus the costs of this adversary proceeding; and a judgment declaring the promissory note to be void *and* avoiding the junior mortgage that secures the note. The Defendants oppose both requests.

The Defendants acknowledge that the remedy created under MINN.STAT. § 334.011 subd. 2 may be applied, but argue that it is not mandatory. This statute provides:

If a greater rate of interest than that permitted by [MINN.STAT. § 334.011 subd. 1] is charged then the entire interest due on that note, bill or other evidence of debt is forfeited. If the greater rate of interest has been paid, the person who paid it may recover in a civil action an amount equal to twice the amount of interest paid.

Their argument that this is not a mandatory remedy is not supported by the statutory language. The second sentence of subd. 2 contains the word "may," which is universally regarded as having permissive rather than mandatory effect. However, the only way of reading the sentence with grammatical and logical precision in its context is to the end that it creates an absolute entitlement to the measure of recovery specified, *if* the borrower sues for it. The use of the word "may" does not grant a discretionary power to the Court to deny such a recovery; it merely operates to allow a borrower the option of not seeking this remedy.[5]

As an adjunct to argument just discussed, the Defendants suggest reformation of the parties' note is the only appropriate remedy. In sum, they request a court-imposed modification of the parties' contract, to substitute the maximum legal rate of interest for the one actually chargeable under the note. This request is inappropriately granted, for at least two reasons.

First, the first sentence of subd. 2 mandates a forfeiture of "the entire interest due on [the] note"—that is, all interest owing but unpaid as of the date of judgment, *and all interest which would otherwise be owing in the future.* As it is generally recognized, "due" means

... [o]wed, or owing, as distinguished from payable. A debt is often said to be *due* from a person where he is the party owing it, or primarily bound to pay, whether the time for payment has or has not arrived.

BLACK'S LAW DICTIONARY at 448 (5th ed. 1979).

Second, as the Plaintiff points out, the equitable remedy of *reformation* is

5. This construction makes special sense because the first and second sentences of subd. 2 create two different remedies. As the Plaintiff notes, the first sentence allows *prospective* relief—the lender may be barred from recovering all *future* interest and from collecting all *unpaid, past-matured* interest. The second sentence makes *retrospective* relief available to the borrower, by allowing the recovery of all *previously-paid* interest, plus a penalty in an equal amount. If the borrower defends on a usury theory, relief under the first sentence would seem to be mandatory. If, however, the borrower chooses to sue in his own right, he can obtain affirmative relief under the second sentence.

available only upon a showing of three elements:

1. The existence of a valid agreement between the parties that expresses their real intention;
2. The failure of the written instrument to express the real intention of the parties; and
3. Cause for the agreement's failure, in a mutual mistake of the parties.

*Nichols v. Shelard Nat'l Bank*, 294 N.W.2d 730, 734 (Minn.1980). The Defendants' reformation theory fails on two out of its three elements. On the question of an interest rate, none of the parties to the note had any formed or articulated intention to comply with the usury laws, or not to comply with them. The thought never entered the head of anyone involved. The only intention on the issue of interest was that expressed in the note. Thus, there was no "valid agreement" with contrary terms; nor does the extant instrument fail to express any such agreement. To the extent that the Defendants argue *In re King*, 68 B.R. 569, 574 n. 13 (Bankr. D.Minn.1986), toward a contrary result, they are mistaken; in the footnote cited the *King* court clearly was applying the interest-forfeiture provisions of MINN.STAT. § 334.011 subd. 2, and was not substituting a legal interest rate to go forward. This was not a case where one or both parties held back their true intentions, negligently or fraudulently, to allow the agreement to be imperfectly or erroneously evidenced. The note very precisely embodied the agreement; faced with the negative consequences of that agreement, the Defendants have no equitable claim to a judicial rewrite of the term that triggers them.

██ In the alternative, the Defendants argue that MINN.STAT. § 334.011 subd. 2 provides the exclusive remedy for usury violations in business loans, and that the Plaintiff is entitled to no more than a fairly modest money judgment. This argument, too, is fatally undercut by the content and structure of the usury statutes. MINN. STAT. § 334.03 provides, in pertinent part, that:

All ... notes, mortgages, and all other contracts and securities, ... whereupon or whereby there shall be reserved, secured, or taken any greater sum or value for the loan or forbearance of any money, goods, or things inaction than prescribed, ... shall be void except as to a holder in due course.

The use of the word "shall" in this provision signifies the mandatory nature of the penalty—the entire avoidance of the debt obligation tainted by usury, and all security granted for it.

The Defendants maintain that this provision is inapplicable to a business loan, noting that MINN.STAT. § 334.011 subd. 2 grants a more specific remedy for the defined wrong committed here, a violation of § 334.011 subd. 1. This reading, however, is just not supported by the language of either statute, or by the general structure of MINN.STAT. c. 334. Section 334.011 subd. 2 contains no language making its remedy the exclusive one for violations of subd. 1. Section 334.03 follows §§ 334.01, 334.011, and 334.012, which set different usury ceilings for different sorts of loans and extensions of credit.[6] As such, it clearly affords a general remedy for the chapter, to which § 334.011 subd. 2 is cumulative for a specific sort of violation. Section 334.03 contains no language limiting its application to loans other than those governed by § 334.-011 subd. 2.

These statutes, then, are clear and unambiguous. Under Minnesota state law, a statute must be enforced literally when its language is not subject to contradiction or absurdity. *State v. West*, 285 Minn. 188, 197, 173 N.W.2d 468, 474 (1970). Under Minnesota's canons of statutory construction,

[e]very law shall be construed ... to give effect to all its provisions. When the words of a law in their application ... are clear and free from all ambiguity, the letter of the law shall not be disregarded.

MINN.STAT. § 645.16. Where the "plain meaning" of a statute compels a specific

---

**6.** Section 334.011 regulates interest rates on business and agricultural loans; § 334.012 regulates interest rates on loans secured by a borrower's savings or time-deposit accounts with an institutional lender; and § 334.01 regulates interest rates on all other "legal indebtedness."

result when applied to established facts, the courts may not avoid that result by resorting to expressions of "legislative intent" or other considerations which do not appear on the face of the statute. *INS v. Cardoza–Fonseca,* 480 U.S. 421, 453, 107 S.Ct. 1207, 1224, 94 L.Ed.2d 434 (1987) (Scalia, J., concurring).

■ . The governing state law, then, requires that the Plaintiff be granted all the relief he requests; he is entitled to a judgment based on the Debtors' past payment of usurious interest, an avoidance of the Defendants' real estate mortgage, and a voiding of the estate's future liability to the Defendants on account of the note. This reading is borne out by past decisions of the Minnesota Supreme Court:

> As we have here a usurious contract, void under the statute, it follows that the one guilty of usurious exaction must bear the legal consequences flowing from such violation. As such he must lose not only the interest on the money risked, but also the principal, including as well all security given to secure performance.

*Midland Loan Fin. Co. v. Lorentz,* 209 Minn. 278, 287, 296 N.W. 911, 915 (1941). Once it finds a violation of the usury laws, the Court must give full effect to the statutes, as prescribed by the Legislature. *Seebold v. Eustermann,* 216 Minn. 566, 576, 13 N.W.2d 739, 744–745 (1945). Given the principal-forfeiture provision of § 334.-03, the lender is not entitled to restoration of the pre-loan *status quo* before its security and right to future interest are voided. *Id.*[7]

The Defendants admit that the Debtors paid them a total of $3,239.93 in interest.

The Plaintiff, then, is entitled to recover twice this sum, $6,479.86, from the Defendants, as damages and penalties pursuant to Minn.Stat. § 334.011 subd. 2. He also is entitled to the two other forms of relief he seeks. This result is, admittedly, harsh. The complaint for that, however, lies as a political matter with the Minnesota Legislature. The mandatory provisions of the usury laws require the entry of the judgment for which the Plaintiff prays.

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED:

1. That the Plaintiff's motion for summary judgment is granted.

2. That the Defendants' motion for summary judgment is denied.

3. That, pursuant to Minn.Stat. § 334.-011 subd. 2, the Plaintiff shall recover from the Defendants the sum of $6,479.86.

4. That, pursuant to Minn.Stat. § 334.-03:

a. the August 31, 1990 promissory note running from the Debtors, as obligors, to the Defendants, as obligees, is null and void, and the bankruptcy estate of the Debtors shall have no further liability to the Defendants on account of that note or the loan transaction which it evidences; and

b. the mortgage granted on August 31, 1990, by the Debtors, in favor of the Defendants, against the following described real estate located in Steele County, Minnesota:

> The East Five (5) feet of Lot Four (4) and Lot Three (3), all in Block Thirteen (13), Village of Blooming Prairie, Minnesota, EXCEPT: That certain exception and reservation made

---

7. Later Minnesota cases create an unfortunate ambiguity on the question of whether a court may undercut the statutory mandates of specific relief. In *Rathbun v. W.T. Grant Co.,* 300 Minn. at 242, 219 N.W.2d at 653, the Minnesota Supreme Court modified the trial court's order to rule out forfeiture of principal as a form of relief, limiting the plaintiffs to a recovery of the excessive interest. Apparently of like mind, the Minnesota Court of Appeals limited a party which had successfully established a usury claim to forfeiture of all finance charges. *Katz & Lange, Ltd. v. Beugen,* 356 N.W.2d 733, 735 (Minn.Ct.App.1984). Dicta in *Phalen Park State Bank v. Reeves,* 312 Minn. 194, 200, 251 N.W.2d 135, 139 (1977), that cites *Lorentz* for the mandatory nature of principal forfeiture, only compounds this ambiguity. These later cases do not overrule *Lorentz* or *Seebold,* or even recognize the mandatory import of the statutory language. To the extent they recognize, *sub silentio,* a discretionary power to pick and choose among the statutory remedies, this Court simply refuses to exercise it; the statutes must be enforced as written.

and described in that certain conveyance from J.C. Brainerd and wife to Charles Bell, dated September 30th, 1895, and recorded in Book 43 of Deeds on page 255, same being as follows, to-wit: "except such part of Lot 3 as is East of a line identical with the East wall of brick building on said lot and extending to the South line of said lot, also reserving right to use said wall of building to attach thereto a brick or stone building."

as set forth in a mortgage instrument filed for record in the Office of the County Recorder for Steele County, Minnesota, on September 6, 1990, in Book 146 of Mortgages page 481, is null and void, and shall have no further force and effect.

c. Pursuant to 11 U.S.C. §§ 551 and 506(b), the transfer of the mortgage avoided under Term 4.b. hereof is preserved for the benefit of the bankruptcy estate of the Debtors.

LET JUDGMENT BE ENTERED ACCORDINGLY.