Joel T. **MARKER**, as Trustee for the Transworld Telecommunications, Inc., Trust, Plaintiff–Appellee,

v.

**PACIFIC MEZZANINE FUND, L.P., Defendant–Appellant.**

No. 01–4043.

United States Court of Appeals, Tenth Circuit.

Oct. 30, 2002.

Michael Himes, (Steven B. Sacks, Perkins Coie LLP, San Francisco, CA, with him on the briefs), Perkins Coie LLP, Seattle, WA, for Defendant–Appellant.

Anthony C. Kaye (Blake D. Miller with him on the brief), Ballard, Spahr, Andrews & Ingersoll, LLP, Salt Lake City, UT, for Plaintiff–Appellee.

Before EBEL, Circuit Judge, McWILLIAMS, Senior Circuit Judge, and MILLER,* District Judge.

EBEL, Circuit Judge.

This case presents an issue of first impression: whether the usury remedy under the Small Business Investment Act ("SBIA"), 15 U.S.C. § 687, provides for the return of collateral retained upon foreclosure of the underlying usurious loan. Appellant Pacific Mezzanine Fund, L.P. ("PMF") loaned $2,500,000 to Transworld Telecommunications, Inc. ("TTI")[1] under the provisions of the SBIA. TTI offered several forms of collateral to secure the loan, including two promissory notes. TTI failed to make one of its interest payments, and PMF's subsequent retention of one of the promissory notes yielded a return in excess of $3,000,000 upon the note's due date.

TTI filed the instant action claiming that the interest charged by PMF violated the SBIA. The bankruptcy court found that PMF had charged excessive interest and ordered PMF to pay TTI double the interest that TTI had paid on the loan and further ordered PMF to return the two promissory notes. Upon appeal, the Unit-

---

* Honorable Walker D. Miller, United States District Court Judge, District of Colorado, sitting by designation.

1. TTI is a Chapter 11 debtor, and its rights against PMF were assigned to the TTI Trust in its Chapter 11 reorganization. Joel Marker is trustee of the TTI Trust.

ed States District Court for the District of Utah agreed that PMF had violated the SBIA by charging usurious interest and ordered payment of double the interest paid and return of the two promissory notes, or the proceeds therefrom.

On appeal to our court, PMF concedes that the interest charged on the loan was usurious and does not contest the district court's order to pay TTI double the interest that it paid on the loan. PMF contends, however, that the district court's order to return the promissory notes (or the proceeds thereof) exceeds the statutory remedies provided for usurious loans under the SBIA. Exercising our jurisdiction pursuant to 28 U.S.C. § 1291, we hold that the usury remedy detailed in the SBIA at 15 U.S.C. § 687(i)(4) does not provide for the return of collateral retained upon proper foreclosure of the underlying usurious loan. Accordingly, we reverse the district court's order requiring PMF to return the promissory notes.

## I. *BACKGROUND*

In June 1996, PMF, a small business investment company licensed under the SBIA, loaned $2,500,000 to TTI. The loan was subject to the provisions of the SBIA, and the parties agreed that it would be governed by California law. Under the SBIA, PMF could not charge more than fourteen percent annual interest on the loan. TTI agreed to make quarterly interest payments on the loan and pledged the following collateral: (1) a "put option" owned by TTI requiring Videotron to purchase TTI's 200 shares of Videotron (Bay Area) Inc. for a price not less than $2,600,000 (the "VBAI Put"); (2) a promissory note from Wireless Holdings, Inc. to TTI in the principal amount of $2,375,415 (the "WHI Note"); and (3) a promissory note from Wireless Cable and Communications, Inc. to TTI in the principal amount of $1,000,000 (the "WCCI Note").[2]

Under the California Commercial Code, a lender has two choices when a borrower defaults. Pursuant to § 9504, the lender may exercise its right to dispose of the collateral, applying the proceeds to the remaining balance on the debt. (Cal. Comm.Code § 9504.) Any surplus from the sale is given to the borrower, but the borrower remains liable for any deficiency if the sale's proceeds are inadequate to satisfy the debt. (*Id.*) Alternatively, a lender may opt to retain the collateral in satisfaction of the debt, thereby eliminating its right to obtain a deficiency judgment against the borrower. Cal. Comm. Code § 9505(2). The borrower has twenty-one days within which to object to the lender's stated intention to retain the collateral. *Id.* If the borrower timely objects, the lender must dispose of the collateral according to the procedures detailed in § 9504, with either the surplus or liability for a deficiency resting with the borrower. (*Id.*) These two choices, sale or retention of the collateral, obviously depend on the parties' assessment of the risks, and their estimation of the value of the collateral and remaining balance on the debt.

On April 1, 1997, TTI failed to make its quarterly interest payment on the loan. On April 15, 1997, PMF notified TTI that the loan was in default, that it had been accelerated, and that payment in full was due. With TTI's consent, PMF exercised

---

**2.** This case involves several figures that ultimately are not relevant to our holding. In addition to principal and interest, TTI also owed PMF a $300,000 warrant purchase agreement, which was to be increased to $375,000 in the event of a default (App. at 68, ¶¶ 15–16) and a loan and application fee of $126,000. (*Id.* at 60–61, ¶ F-4.) The district court later found that the loan and application fee exceeded the statutory maximum by $1,600, but that finding is not relevant to this appeal. (*Id.* at 61, ¶ F–15.)

the VBAI Put, receiving $2,600,000. After applying these proceeds to TTI's obligations on the loan, PMF calculated the remaining balance on the loan to be $403,238.94 and informed TTI of this remaining balance on May 13, 1997. TTI did not respond to this letter. Interest continued to accrue on the defaulted loan, and on June 24, 1997, PMF sent a letter[3] to TTI informing it that an outstanding balance of $413,667.91 remained on the loan and that PMF intended to retain the collateral in satisfaction of TTI's obligation on the loan, pursuant to § 9505(2) of the California Commercial Code. TTI did not exercise its § 9505(2) right to object to this letter, and on July 18, 1997, PMF retained the two promissory notes. By its terms, the WHI Note was due on December 31, 1999. Sprint Corp. purchased WHI, a holder of wireless frequencies, sometime after PMF's retention of the WHI Note and the Note being due, resulting in a dramatic increase in the Note's value. When the Note became due, PMF received a payment of $3,834,262 in principal and interest on the WHI Note. TTI argues that PMF's enormous gain on a usurious loan violates the SBIA and that return of the promissory notes[4] (meaning the proceeds from the WHI Note and the WCCI Note itself) is a remedy authorized by the SBIA.

TTI filed a Chapter 11 petition at the end of 1997. It then filed the instant action claiming that the interest rate charged by PMF violated the SBIA. In June 2000, the bankruptcy court found that PMF had charged interest in excess of fourteen percent and ordered PMF to

pay TTI double the interest that TTI had paid on the loan. It also found that the balance actually due at the time of the Retention Letter was approximately $98,000, not $413,000, and that TTI had relied detrimentally on the erroneous balance in failing to object to PMF's retention of the collateral. Thus, it also ordered PMF to return the two promissory notes. In January 2001, the district court adopted the findings and recommendations of the bankruptcy court, except that it found insufficient evidence to support the bankruptcy court's finding of detrimental reliance.[5] *In re Transworld Telecomm., Inc. v. Pacific Mezzanine Fund, L.P.,* 260 B.R. 204 (D.Utah 2001). Nonetheless, the district court ordered the return of the promissory notes, citing the forfeiture provision of the SBIA, 15 U.S.C. § 687(i)(4)(A) as authority, in addition to ordering PMF to pay TTI twice the interest it had paid, pursuant to 15 U.S.C. § 687(i)(4)(B). The district court set the prejudgment interest rate on the proceeds of the WHI Note at fourteen percent.

PMF now appeals the district court's order of return of the promissory notes (or their proceeds), and in the alternative, argues that the district court abused its discretion in setting the prejudgment interest rate at fourteen percent.

## II.  DISCUSSION

### A.  Standard of Review

This court reviews de novo the district court's interpretations of federal law. *Resolution Trust Corp. v. Federal Sav.*

---

**3.**  The parties refer to this June 24, 1997, letter as the "Retention Letter".

**4.**  The parties refer to the district court's remedy as "return of the promissory notes," but since the WHI Note has already been redeemed, PMF was seeking the proceeds from that transaction. The WCCI Note has not

been redeemed, and according to TTI, was due on August 1, 2001, after the parties had submitted their briefs.

**5.**  TTI has not challenged on appeal the district court's finding of no detrimental reliance on the erroneous loan balance.

*and Loan Ins. Corp.,* 25 F.3d 1493, 1506 (10th Cir.1994). We review the findings of fact made by the bankruptcy court and adopted by the district court for clear error. *Phillips v. White (In re White),* 25 F.3d 931, 933 (10th Cir.1994).

### B. *Analysis*

#### 1. *SBIA*

The SBIA provides consequences in the event that a lender charges a small business borrower an interest rate that exceeds the maximum limit authorized by statute. No case has interpreted the remedial provisions of the SBIA at issue in this case, which state:

(A) If the maximum rate of interest authorized under paragraph (2) on any loan made by a small business investment company exceeds the rate which would be authorized by applicable State law if such State law were not preempted for purposes of this subsection, the charging of interest at any rate in excess of the rate authorized by paragraph (2) *shall be deemed a forfeiture of the greater of (i) all interest which the loan carries with it, or (ii) all interest which has been agreed to be paid thereon.*

(B) In the case of any loan with respect to which there is a forfeiture of interest under subparagraph (A), *the person who paid the interest may recover from a small business investment company making such loan an amount equal to twice the amount of interest paid on such loan.* Such interest may be recovered in a civil action commenced in a court of appropriate jurisdiction not later than two years after the most recent payment of interest.

15 U.S.C. § 687(i)(4) (emphasis added).

In this case, both parties agree that PMF charged TTI an interest rate greater than that permitted under the statute, and PMF concedes that it must pay TTI twice the interest that TTI paid on the usurious loan, in accordance with 15 U.S.C. § 687(i)(4)(B). The sole point of disagreement between the two parties on this issue is how to interpret the remedial provisions of § 687(i)(4), and specifically, whether the return of the promissory notes, as ordered by the district court, is a remedy permitted by the statute.

PMF contends that the "forfeiture of interest" provision stated in § 687(i)(4)(A) provides a *defense* to borrowers if a lender sues to recover interest on a usurious loan. In contrast with § 687(i)(4)(B), which provides borrowers with an affirmative *recovery* of interest paid, PMF argues that § 687(i)(4)(A) provides a remedy when usurious interest has been charged, but not collected. Thus, it argues that § 687(i)(4)(A) has no relevance to this case. TTI, on the other hand, contends that because PMF retained the promissory notes "largely on account of forfeited interest," PMF ran afoul of § 687(i)(4)(A), and thus, the district court correctly ordered the notes returned to TTI. The issue, in short, is whether § 687(i)(4)(A) provides an aggrieved debtor with a basis for affirmative recovery.

When interpreting a statute, the plain meaning controls. *See Robinson v. Shell Oil Co.,* 519 U.S. 337, 340–41, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997). By its terms, the statute establishes an affirmative "recover[y]" of interest paid in § 687(i)(4)(B) and does not contain language of "recovery" in § 687(i)(4)(A). For example, paragraph (B) states who may recover (the "person who paid the interest"), what they may recover ("amount equal to twice the amount of interest paid on the loan"), how they may recover (by commencing a civil

action), where they must act (in a court of appropriate jurisdiction), and when they may recover ("not later than two years after the most recent payment of interest"). 15 U.S.C. § 687(i)(4)(B). Paragraph (A) contains none of these details and instead contains self-executing bar language ("shall be deemed a forfeiture"). When compared with the language of paragraph (A), the level of specificity detailed in paragraph (B) about how a borrower may recover supports PMF's position that paragraph (B) provides the sole vehicle for a borrower's *recovery* of interest paid.

■ Although no court has yet decided whether § 687(i)(4)(A) of the SBIA allows for return of retained collateral, cases interpreting usury statutes similar to the SBIA support PMF's contention that the forfeiture provision of § 687(i)(4)(A) provides only a defense to borrowers, as opposed to a vehicle for recovery. Usury statutes providing remedies both for interest charged—forfeiture of all interest—and for interest paid—recovery of twice the interest paid—have been interpreted as providing separate defensive and affirmative remedies. For example, the Supreme Court explained in *Talbot v. First Nat'l Bank of Sioux City* that a similar

usury statute[6] provided for "two cases." 185 U.S. 172, 180, 22 S.Ct. 612, 46 L.Ed. 857 (1902). These two scenarios were "(1) where illegal interest has been taken, received, or charged;"[7] and "(2) where illegal interest has been paid." *Id.* The Court explained that in the first case, "the entire interest ... shall be deemed forfeited," and that in the second case, "the person who has paid 'the greater rate of interest may recover twice the amount of interest thus paid.' " *Id.*

A more illustrative explanation of the difference between the two remedies in a similar statute[8] is found in *Dietz v. Phipps (In re Sunde)*, 149 B.R. 552 (Bankr. D.Minn.1992). In *Dietz*, the court highlighted the different types of relief afforded by the "two different remedies." *Id.* at 559, n. 5.

[T]he first sentence allows *prospective* relief—the lender may be barred from recovering all *future* interest and from collecting all *unpaid, past-matured* interest. The second sentence makes *retrospective* relief available to the borrower by allowing the recovery of all *previously-paid* interest, plus a penalty in an equal amount. If the borrower

185 U.S. at 180, 22 S.Ct. 612.

6. The statute at issue in *Talbot* provided the following consequences if interest was charged at an excessive rate:

The taking, receiving, reserving, or charging a rate of interest greater than is allowed by the preceding section, when knowingly done, shall be deemed a forfeiture of the entire interest which the note, bill, or other evidence of debt carries with it, or which has been agreed to be paid thereon. In case the greater rate of interest has been paid, the person by whom it has been paid, or his legal representatives, may recover back, in an action in the nature of an action of debt, twice the amount of the interest thus paid from the association taking or receiving the same; provided such action is commenced within two years from the time the usurious transaction occurred.

7. Even though this statute requires forfeiture in more situations than those prohibited by the SBIA, which only addresses the "charging" of excessive interest, the "taking, receiving, reserving, or charging" language appears to be standard usury language that does not mean "paid."

8. The statute at issue in *Dietz* stated:

If a greater rate of interest than permitted by [statute] is charged then the interest due on that note, bill or other evidence of debt is forfeited. If the greater rate of interest has been paid, the person who paid it may recover in a civil action an amount equal to twice the amount of interest paid.
149 B.R. at 559.

defends on a usury theory, relief under the first sentence would seem to be mandatory. If, however, the borrower chooses to sue in his own right, he can obtain affirmative relief under the second sentence.

*Id.* (emphasis in original).

Similarly, the Court of Appeals of New York has explained the difference between a lender's forfeiture of interest and its penalty of paying the borrower twice the interest actually paid. *Szerdahelyi v. Harris,* 67 N.Y.2d 42, 499 N.Y.S.2d 650, 490 N.E.2d 517 (1986). The statute at issue in that case provided two separate remedies when a bank issued a usurious loan: any interest on the loan was forfeited and "[a] penalty is also assessed: any excess interest paid by a borrower to the [lender] may be recovered from [the lender] in twice the amount paid." *Id.* at 521. The court articulated the difference between the forfeiture and penalty provisions, namely that forfeiture required a lender to forego his right to interest on the loan, whereas the penalty provision required actual payment of money received. "A penalty is commonly understood to be the exacting of a sum of money as punishment for performing a prohibited act ... (*see,* Black's Law Dictionary, at 1020 [5th ed 1979] ), e.g., the payment of double the amount of excess interest.... A forfeiture is the *loss of a right* by the commission of a crime or fault (*id.* at 584), e.g, the forfeiture of interest." *Id.* (Emphasis added.)

Secondary authority generally describing usury statutes also discusses the two types of remedies those statutes usually contain. "Typically, a usury statute ... creates one of two scenarios: it may require payment of a penalty upon payment of usurious interest by the borrower, or in the alternative require forfeiture of interest where there has been no payment made on a note which is otherwise deemed usurious." 45 Am.Jur.2d Interest and Usury § 310 (1999). Forfeiture of interest is characterized as a defensive mechanism, being available only when a lender presses a borrower for the interest. "The right [under a similar usury statute] to the forfeiture of usurious interest ... generally is asserted as a defense to an action by the [lender]." *Id.* § 314; *see also id.* ("Provisions for the forfeiture of unpaid interest as a penalty for the exaction of an agreement to pay interest at a usurious rate appear to attach only when an effort is made to enforce a usurious contract."); *Consumer Usury and Credit Overcharges* § 2.4.1, National Consumer Law Center (1982) ("Usury remedies usually allow the borrower to recover any interest paid and to *discharge obligations* for outstanding interest amounts.") (emphasis added).

█ Therefore, we read § 687(i)(4) as affording the same type of remedies as similar usury statutes: the forfeiture provision, § 687(i)(4)(A), provides a defense to borrowers in the event that a lender tries to collect any interest on a usurious loan. If interest has already been paid on the loan, the borrower may recover in a civil action twice the interest paid, provided that the action is commenced within the two year statute of limitation. § 687(i)(4)(B).

### 2. *Application*

█ Because § 687(i)(4)(A) of the SBIA does not provide an affirmative remedy for borrowers, nor does it require the return of paid interest, the district court erred in ordering the return of the promissory notes pursuant to § 687(i)(4)(A). Notwithstanding this conclusion, TTI's contention that the forfeiture provision requires return of the retained collateral fails for a second reason. Even though TTI argues that the notes were retained largely on account of forfeited interest, it is undisput-

ed that there was some amount of non-interest unpaid debt remaining on the loan at the time PMF retained the notes.

■ The bankruptcy court and the district court found that the loan balance at the time PMF retained the notes should have been approximately $98,000, as opposed to the over $400,000 figure that PMF told TTI remained on the loan. TTI did not appeal this finding, but argues on appeal that the $98,000 figure includes legitimate interest, to which PMF is not entitled under § 687(i)(4)(A) (charging excessive interest in violation of the statute "shall be deemed a forfeiture of the greater of (i) *all* interest which the loan carries with it, or (ii) *all* interest which has been agreed to be paid thereon") (emphasis added). Even though we agree with TTI's contention that all interest, including non-usurious, legitimate interest, is forfeited under § 687(i)(4)(A), we need not determine what the correct balance due on the loan was, because TTI concedes that at least $18,000 of valid non-interest debt remained on the loan at the time PMF retained the notes. (Aple Br. at 25 ("at most, only $18,638 of principal remained").)

■ The SBIA's remedial provisions at issue in this case, by their terms, deal with *interest*, and when the lender charges an excessive interest rate, requires the *forfeiture of interest charged* (§ 687(i)(4)(A)) and a return to the borrower of *twice the interest paid* (§ 687(i)(4)(B)). The under-

lying principal obligation, and the collateral that secures it, remain undisturbed by the statute. *See United States v. Fidelity Capital Corp.,* 920 F.2d 827, 831 (11th Cir.1991) ("A loan or other transaction that violates either the [SBIA] or the regulations, however, is still valid and enforceable between the parties."). Therefore, despite its violation of the SBIA by charging excessive interest, PMF retained its right to proceed with foreclosure procedures on the outstanding, non-interest debt on the loan, pursuant to the applicable California law.[9] When PMF indicated its intent to retain the promissory notes in satisfaction of the remaining obligation, TTI had twenty-one days to object. Cal. Comm.Code § 9505(2). If TTI had timely objected to PMF's retention of the collateral in full satisfaction of the outstanding loan, then PMF would have been required to dispose of the collateral, putting the proceeds towards the satisfaction of the remaining loan balance. (*Id.*) TTI would have remained liable for any deficiency on the loan (i.e. if proceeds from the sale were insufficient to cover the loan), but it also would have received any excess funds from the sale (i.e. if proceeds from the sale exceeded the remaining obligation on the loan). If TTI had believed that the promissory notes had significant value at the time they received PMF's Retention Letter, they certainly could have requested that PMF dispose of the notes, with TTI receiving the benefits of excess proceeds from that sale.[10]

---

9. Thus, we are not presented with the more difficult question of what remedy the SBIA provides if PMF retained the collateral *solely* on the basis of an outstanding balance that consisted *only* of forfeitable interest.

10. The district court questioned TTI's attorney at oral argument about why this option was not pursued. "Why didn't your client do something? Why didn't it—if it knew that the collateral was worth four to $5 million, and

even assuming a $400,000 debt, why didn't they take some action to have another buyer purchase the collateral or one of the other remedies that I believe—." (App. at 160.) TTI's attorney apparently misunderstood the options available to his client under the California Commercial Code. He replied that TTI may have been able to raise $86,000 if only that amount was due, but knew that it could not raise $413,000. (*Id.*) As stated above, a borrower in default does not have to actually

We are troubled by the seemingly inequitable result in this case stemming from PMF's misstatement of the remaining balance due on the loan. TTI, however, was not without legal recourse to remedy that erroneous balance—it could have pursued a cause of action under the California Commercial Code. TTI did not raise a such a claim below, however, relying solely on the SBIA provisions and common law theories of estoppel, conversion, and reliance in its complaint and trial brief before the bankruptcy court. In its reply to PMF's objections to the bankruptcy court's findings, TTI did not state as a separate issue that the notice violated the California Commercial Code, nor did it present the issue at oral argument before the district court. TTI's new argument based on the California Commercial Code is, not surprisingly, unsupported by the record because it was not presented to either of the courts below.

Because we find the district court improperly ordered PMF to return the promissory notes, we need not address PMF's argument that the district court abused its discretion in setting the prejudgment interest rate at fourteen percent.[11]

### III. *CONCLUSION*

We REVERSE the district court's order instructing PMF to return the promissory notes or proceeds therefrom to TTI and REMAND this case to the district court for proceedings consistent with this opinion.

---

purchase the collateral, but can require that it be disposed of, as opposed to allowing the lender to retain it in satisfaction of the debt.

11. Accordingly, we dismiss PMF's Application for Leave to Correct Judgment Due to Clerical Error as moot. We grant PMF's Motion for Leave to File Supplemental Appendix.